## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **MELVILLE CAPITAL, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:11-cv-00888** |
| | ) | |
| **v.** | ) | **Judge Nixon** |
| | ) | **Magistrate Judge Griffin** |
| **TENNESSEE COMMERCE BANK,** | ) | |
| **LANDMARK CONSULTING, LLC, and** | ) | |
| **JAMES D. WEST, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Pending before the Court is Defendant Tennessee Commerce Bank's ("TCB") Motion to Dismiss ("Motion") (Doc No. 16), filed along with a Memorandum in Support (Doc. No. 17). Plaintiff Melville Capital, LLC has filed a Response in Opposition to Defendant's Motion (Doc. No. 21), to which TCB has filed a Reply (Doc. No. 30). For the reasons given below, TCB's Motion is **GRANTED in part** and **DENIED in part**.

I.  **BACKGROUND**

  A.  *Factual Background*[1]

Plaintiff is a life settlement broker that specializes in monetizing existing life insurance policies. Plaintiff has developed a process whereby it creates a policy analysis, marketing package, and asset sale strategy for all policies it agrees to sell. Plaintiff alleges that this analytical process is its proprietary information and that it makes reasonable efforts to maintain such information confidential.

---

[1] The facts in this section are taken from Plaintiff's Amended Complaint (Doc. No. 10), unless otherwise noted.

In May of 2011, counsel for TCB allegedly contacted Plaintiff for assistance in the marketing and sale or other disposition of a portfolio of life insurance policies. As a part of their discussions, Plaintiff and TCB entered into a Confidentiality and Nondisclosure Agreement ("NDA") on May 20, 2011, whereby the two parties agreed to disclose confidential information to each other and to keep such information confidential. These talks allegedly fell through, but on May 27, 2011, TCB allegedly engaged Plaintiff to market and broker a life insurance policy for Gary K. Wilder ("Wilder Policy"), in which TCB and co-Defendant Landmark Consulting, LLC ("Landmark") allegedly have an ownership interest due to a loan that TCB issued to Landmark. Pursuant to the new agreement between Plaintiff and TCB, TCB allegedly agreed to sell the Wilder Policy to any buyer Plaintiff found who bid above $5,000,000.

During the course of Plaintiff's efforts to market and find a buyer for the Wilder Policy, Plaintiff allegedly shared some of its proprietary information, including policy analysis, marketing, and sale strategies, with TCB. On or about June 29, 2011, Plaintiff allegedly found a buyer who agreed to pay a sum that would net TCB a $5,000,000 profit, thus meeting the terms of the agreement and entitling Plaintiff to a commission of $250,000, but TCB said it did not want to sell the Wilder Policy after all. Plaintiff alleges that TCB and co-Defendants Landmark and James D. West, a managing member of Landmark, continued to market and try to sell the Wilder Policy, sometimes in combination with the previously-mentioned portfolio of policies. Plaintiff alleges that, in so doing, Defendants have used Plaintiff's proprietary information. Plaintiff alleges that, on August 30, 2011, counsel for TCB indicated in a letter that TCB did not intend to honor its obligations under the parties' agreement regarding the Wilder Policy. The following day, however, counsel for TCB allegedly called Plaintiff, indicating that TCB was still considering honoring the agreement. There were no further communications between the parties,

and the buyer Plaintiff found has now withdrawn its bid.  On September 9, 2011, Mr. West allegedly contacted Plaintiff, requesting that Plaintiff provide him with additional proprietary information regarding the Wilder Policy.

### B.  Procedural Background

Plaintiff initiated this lawsuit on September 19, 2011.  (Doc. No. 1.)  Plaintiff filed an Amended Complaint on October 25, 2011.  (Doc. No. 10.)  Plaintiff brings the following claims: violation of the Tennessee Uniform Trade Secrets Act (TUTSA), unfair competition, and unjust enrichment against all three Defendants, and breach of contract, tortious interference with business relations, and breach of duty of good faith and fair dealing against TCB.  (*Id.*)


## II.  LEGAL STANDARD

To withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must allege "[e]nough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Supreme Court recently clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  Plausibility requires "[m]ore than a sheer possibility that a defendant has acted unlawfully." *Id.*  A complaint that pleads facts "'[m]erely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 546).

When ruling on a defendant's motion to dismiss, the Court must "[c]onstrue the complaint liberally in the Plaintiffs' favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994).

The Court must allow "[a] well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556.

Additionally, while the Court will not generally consider matters outside of the pleadings when ruling on a motion to dismiss, "the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (citing *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001) and *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)). Furthermore, any documents that are "attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

III.    ANALYSIS

    A.  *Promissory Estoppel & Consideration of Nondisclosure Agreement*

As an initial matter, TCB generally disputes Plaintiff's characterization of the parties' arrangement as a formal agreement, arguing that the two sides had only engaged in preliminary discussions and discussed a potential engagement of Plaintiff to sell certain life insurance policies for TCB.  (Doc. No. 17 at 2.)  Thus, TCB argues that the six claims Plaintiff brings against TCB are all "based on two promissory estoppel claims: 1) that TCB and [Plaintiff] verbally agreed to a brokerage agreement; and 2) that TCB and [Plaintiff] verbally agreed to expand the written NDA."  (*Id.* at 8.)  As such, TCB argues that the "underlying grounds" for Plaintiff's claims must fail because Plaintiff's "reliance was not reasonable or justifiable" and

there was "no agreement" between the parties. (*Id.* at 9.) TCB states that this is because Plaintiff has not asserted that "TCB had the ability, authorization or consent to transfer Landmarks' [*sic*] interest and does not assert that Landmark was a party to the agreement." (*Id.*) Furthermore, TCB argues that Plaintiff could not have relied on a "verbal modification" of the parties' NDA because the NDA expressly stated that the parties were only in initial discussions regarding a potential agreement and amendments to the NDA, by its own terms, had to be made in writing. (*Id.*) Though TCB notes that Plaintiff has not attached the NDA to its Amended Complaint, TCB states that the Court should nevertheless "take notice of [the] NDA as part of the record of this matter." (*Id.* at 3 n.1.)

In its Response, Plaintiff first urges the Court to ignore TCB's promissory estoppel arguments because Plaintiff did not plead any such claims. (Doc. No. 21 at 4.) Additionally, Plaintiff argues that the Court should disregard TCB's arguments about the parties' NDA, as Plaintiff did not plead a claim for breach of the NDA, nor did it attach the NDA as an exhibit to the Amended Complaint, which supersedes Plaintiff's original Complaint in full. (*Id.* at 5-6.)

In its Reply, TCB first reasserts that the Court should consider the parties' NDA, as it is a document to which Plaintiff has referred in its Amended Complaint and indicates the preliminary nature of the parties' discussions. (Doc. No. 30 at 1-3.) While TCB had previously only urged the Court to consider the copy of the NDA filed with Plaintiff's original Complaint, TCB has now filed a copy of the NDA with its Reply. (Doc. No. 30-2.) Additionally, TCB restates its contention that Plaintiff has failed to acknowledge Landmark's ownership interest in the Wilder Policy. (Doc. No. 30 at 3.) TCB argues that, without Landmark's consent, the parties could not perform the agreement, and thus the allegations do not support an assertion that TCB was able to sell the Wilder Policy on its own. (*Id.* at 3-4.)

The Court agrees with Plaintiff on both of these initial issues. First, Plaintiff did not plead any promissory estoppel claims, and TCB's attempt to re-characterize Plaintiff's claims as such is unwarranted. Had Plaintiff wanted to seek a remedy based on a promissory estoppel claim, Plaintiff could have pleaded such a claim. Similarly, if Plaintiff's claims against TCB must be dismissed, then they will be dismissed on the grounds that they do not meet the pleading standards for the claims Plaintiff has elected to pursue, not because they failed to meet a pleading standard for TCB's re-characterization of Plaintiff's claims.

Secondly, the Court will not consider the NDA. Plaintiff did attach the NDA to its original Complaint. (Doc. No. 1-1.) However, Plaintiff did not attach the NDA to its Amended Complaint. (*See* Doc. No. 10.) Because Plaintiff's Amended Complaint entirely supersedes Plaintiff's original Complaint, *see, e.g.*, *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306-07 (6th Cir. 2000), the NDA cannot be considered as part of the pleadings. Furthermore, documents that are attached to a motion to dismiss are considered part of the pleadings only if such documents "are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson*, 194 F.3d at 745 (citing *Weiner*, 108 F.3d at 89). TCB stated that it incorporated the NDA by reference in its original Motion (Doc. No. 17 at 3 n.1), and attached it as an exhibit to its Reply (Doc. No. 30-2). Additionally, Plaintiff does refer to the NDA in its Amended Complaint. (*See* Doc. No. 10 ¶¶ 16-17, 28.) Nevertheless, Plaintiff does not bring a claim based on the NDA, nor does Plaintiff refer to the NDA in the portion of its Complaint detailing its claims against TCB. (*See id.* ¶¶ 52-84.) As such, the Court cannot say that the NDA is "central" to Plaintiff's claims against TCB. The Court therefore declines TCB's invitation to consider the NDA and will instead rule on TCB's Motion solely by considering the contents of Plaintiff's Amended Complaint.

## B. Breach of Contract Claim

TCB first argues for dismissal of Plaintiff's breach of contract claim. TCB notes that Plaintiff has not provided any written agreement between the parties to sell the Wilder Policy, and argues that Plaintiff's allegations regarding the alleged verbal agreement "fail to specify the terms" of such an agreement. (Doc. No. 17 at 11.) TCB thus states that because there was no "meeting of the mind[s], there [was] no breach" of contract. (*Id.* at 12.) Further, TCB argues that Plaintiff does not provide details as to the party who allegedly agreed to bid $5,000,000 on the policy—which, TCB notes, does not meet the alleged requirement that Plaintiff find a bidder willing to bid above $5,000,000. (*Id.*) TCB also asserts that, even if the parties did have an agreement, Plaintiff should be viewed as "an at-will agent," and TCB "terminated" Plaintiff prior to Plaintiff obtaining a bid for the Wilder Policy. (*Id.* at 13.) Lastly, TCB argues that Plaintiff never alleges that it "obtained any information from TCB regarding the Wilder Policy," which conflicts with the NDA's terms that Plaintiff "obtain written consent to disclose any information that TCB provided to" Plaintiff. (*Id.*)

Plaintiff argues that it has pleaded sufficient factual allegations to state a plausible claim for breach of contract. (Doc. No. 21 at 6.) Plaintiff asserts that oral contracts, even if simple in their terms, are clearly valid under Tennessee law, and the Amended Complaint contains sufficient allegations to establish that such a contract existed between the parties. (*Id.* at 7-8.) Plaintiff also contends that it has sufficiently pleaded a breach of the contract because Plaintiff produced "a ready, willing[,] and able" buyer, and that TCB nevertheless refused to sell the Wilder Policy and pay Plaintiff its commission. (*Id.* at 10.) Finally, Plaintiff argues that it has sufficiently pleaded facts about the damages it sustained as a result of TCB's alleged breach, since Plaintiff alleged that it lost a commission of $250,000. (*Id.* at 11.)

Under Tennessee law, a plaintiff bringing a breach of contract claim "must prove [1] the existence of a valid and enforceable contract, [2] a deficiency in the performance amounting to a breach, and [3] damages caused by the breach." *Fed Ins. Co. v. Winters*, No. E2009-02065-SC-R11-CV, 2011 Tenn. LEXIS 968, at *9 (Tenn. Oct. 25, 2011). Moreover, an oral contract will be considered "valid and binding so long as the terms are definite and certain." *Thompson v. Creswell Indus. Supply*, 936 S.W.2d 955, 957 (Tenn. Ct. App. 1996) (citing *Simmons v. Foster*, 622 S.W.2d 838 (Tenn. Ct. App. 1981)).

Plaintiff has pleaded sufficient factual allegations to satisfy these requirements. Plaintiff has alleged that the parties had a contract whereby Plaintiff would market and find a buyer for the Wilder Policy. (Doc. No. 10 ¶¶ 21-22.) While Plaintiff has not provided any writing evidencing the parties' agreement, the terms of the alleged oral contract appear to be sufficiently "definite and certain." Plaintiff has alleged that it was to "market and broker the Wilder Policy" for TCB, which "agreed to sell the Wilder Policy to any buyer procured by [Plaintiff] who bid above five million dollars ($5,000,000) for the Wilder Policy, and to pay [Plaintiff] a commission from the sale." (*Id.* ¶ 22.) Plaintiff has elsewhere alleged that its earned commission on the sale would have totaled $250,000. (*Id.* ¶ 33.) Courts in Tennessee have upheld contracts similar to the one at issue in this case, although there was no agreement as to other terms. *See, e.g.*, *Parks v. Morris*, 914 S.W.2d 545, 547-48 (Tenn. Ct. App. 1995) (finding a real estate broker to be entitled to a commission where the parties agreed on the rate of the broker's commission, despite the defendant's objections that there was no exclusivity term or duration to the parties' agreement). The Court fails to see how such alleged terms—which refer to both parties' obligations and the payment Plaintiff was to receive—are lacking in specificity,

as TCB has argued.  In short, Plaintiff has sufficiently pleaded the existence of a valid and enforceable contract.

Second, Plaintiff has pleaded sufficient facts regarding TCB's alleged breach of the agreement.  Plaintiff has alleged that it found a buyer who would bid over $5,000,000 and that it informed TCB that it had done so.  (Doc. No. 10 ¶ 31.)  Plaintiff further alleges that TCB "elected not to sell the Wilder Policy after all" (*id.* ¶ 34), that TCB later "refused to confirm during communications whether it intended to honor its agreement" (*id.* ¶ 45), and that "by letter dated August 30, 2011 . . . counsel for TCB indicated that TCB did not intend to honor its obligations under the Wilder Policy Agreement" (*id.* ¶ 46).  Such a situation is similar to that presented in *Parks v. Morris*, where the Tennessee Court of Appeals considered the "defendants' refusal to respond to offers procured by the plaintiff [to be] in bad faith."  914 S.W.2d at 549. This Court finds that the fact Plaintiff has not specifically named the alleged buyer in the Amended Complaint to be irrelevant, as Plaintiff has otherwise alleged its compliance with the terms of and TCB's breach of the agreement between the parties.

Lastly, Plaintiff has sufficiently pleaded its alleged damages.  Plaintiff alleges that it "has been damaged in the amount of two hundred fifty thousand dollars ($250,000), the amount of the commission Melville would have received from the sale of the Wilder Policy Agreement, plus the costs of litigation, including attorneys' fees."  (*Id.* ¶ 54.)

Because Plaintiff has sufficiently pleaded a claim for breach of contract, TCB's arguments as to Plaintiff's supposed at-will status are irrelevant.  TCB's arguments based on the NDA are similarly beyond the scope of this inquiry, as the Court has stated that it will not consider the terms of the NDA for the purposes of deciding TCB's Motion.  TCB's Motion is

therefore **DENIED** with respect to Plaintiff's breach of contract claim, as Plaintiff has pleaded a plausible claim for breach of contract under Tennessee law.

### C. TUTSA Claim

The parties also disagree as to whether Plaintiff has sufficiently pleaded a TUTSA claim. (Doc. No. 17 at 14-17; Doc. No. 21 at 12-18.)

Under TUTSA, "'the elements for a misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) misappropriation of the trade secret by the defendant; and (3) resulting detriment to the plaintiff.'" *ProductiveMD, LLC v. 4UMD, LLC*, No. 3:10-1100, 2011 U.S. Dist. LEXIS 109461, at *10 (M.D. Tenn. Sept. 27, 2011) (quoting *Partylife Gifts, Inc. v. Swiss Colony Occasions*, No. 3:06-CV-170, 2006 U.S. Dist. LEXIS 57616, at *9 (E.D. Tenn. Aug. 15, 2006)). The statute defines a "trade secret," in relevant part, as follows:

> [I]nformation . . . including . . . a . . . process . . . that:
> (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. § 47-25-1702(4). "Misappropriation" includes:

> [d]isclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that that person's knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use[.]

*Id.* § 47-25-1702(2)(B)(ii)(b).

Having examined the Amended Complaint, the Court finds that Plaintiff has sufficiently pleaded the elements of a TUTSA claim. First, Plaintiff alleges that, using a "process" it has developed whereby "its team of professionals reviews and analyzes life insurance policies,

obtains and/or updates and analyzes life expectancy reports and other non-public information regarding a particular insured," it "creates a specialized and confidential comprehensive policy analysis, marketing package, and asset sale strategy" for the life insurance policies that it agrees to market and sell. (Doc. No. 10 ¶ 8.) Plaintiff has further alleged that this proprietary information "is information that derives independent value from not being generally known, or readily ascertainable by other persons apart from [Plaintiff], including, but not limited to, Defendants," and that it "takes efforts to keep its Proprietary Information confidential." (*Id.* ¶¶ 56-57.) Plaintiff has thus pleaded the elements constituting and existence of a "trade secret" under TUTSA. TCB's contention that Plaintiff failed to allege that it took steps to protect its trade secret is both factually and legally incorrect, as Plaintiff did specifically make such an allegation (*id.* ¶ 57), and this District has found that "[i]t would be superfluous to include [pleadings on the specific efforts that the plaintiff took to ensure secrecy] because, by definition, a trade secret requires reasonable efforts to maintain secrecy." *ProductiveMD*, 2011 U.S. Dist. LEXIS 109461, at *10 (citing Tenn. Code Ann. § 47-25-1702(4)(B)).

Second, Plaintiff has sufficiently alleged that TCB misappropriated Plaintiff's trade secret. Plaintiff has alleged that TCB "agreed that it would not disclose the [proprietary information] to other entities." (Doc. No. 10 ¶ 59.) Plaintiff has also pleaded that TCB disclosed this information to other brokers and/or buyers and has used and continued to use the information, without Plaintiff's consent, to try to sell the Wilder Policy. (*Id.* ¶ 60.) Such allegations clearly satisfy the definition of "misappropriation" as defined by TUTSA.

Finally, Plaintiff has alleged damages in the amount of $250,000 "and/or a reasonable royalty from any sale of the Wilder Policy by use of [Plaintiff's] Proprietary Information." (*Id.* ¶

61.)  Plaintiff has thus sufficiently pleaded the third element of a TUTSA claim, i.e. the detriment that it has suffered as a result of TCB's misappropriation of its trade secret.

Because Plaintiff has "identif[ied] the specific things it claims to constitute trade secrets and [] alleg[ed] that those items were misappropriated by" TCB, *ProductiveMD*, 2011 U.S. Dist. LEXIS 109461, at *11, Plaintiff has sufficiently stated a claim under TUTSA.  Moreover, as Plaintiff does not appear to be pleading an equitable misappropriation of proprietary information claim, in that Plaintiff's reference to "misappropriation of proprietary information" is clearly part of Count II, its TUTSA claim, TCB's argument on that point is irrelevant.  Accordingly, TCB's Motion is **DENIED** with respect to Plaintiff's TUTSA claim.

### D.  Tortious Interference with Business Relations Claim

Third, TCB argues that Plaintiff's tortious interference with business relations claim should be dismissed because it is preempted by TUTSA.  (Doc. No. 17 at 17-18.)  Alternatively, TCB argues that the "claim is merely a recital of legal elements and is too remote to support a cause of action," and thus should be dismissed under *Twombly* and *Iqbal*.  (*Id.* at 18.)

In its Response, Plaintiff argues that its tortious interference with business relations claim is not preempted by TUTSA because the claim does not depend on TCB's misappropriation of Plaintiff's trade secrets.  (Doc. No. 21 at 19.)  Rather, Plaintiff asserts that the claim is based on "TCB's bad faith breach" of the parties' agreement, since TCB knew that its breach would interfere with Plaintiff's relationship with the buyer it had found.  (*Id.*)  Plaintiff then argues that it has pleaded sufficient facts for such a tortious interference claim.  (*Id.* at 20-21.)

TUTSA, by its own terms "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."  Tenn. Code Ann. § 47-25-1708(a).  "[C]ivil remedies that are not based upon misappropriation of a trade secret" are not

preempted. *Id.* § 47-25-1708(b)(2). This District has adopted a "same proof" standard to determine when a civil remedy is preempted by TUTSA. Under this standard, "'if proof of a non-[T]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it.'" *ProductiveMD*, 2011 U.S. Dist. LEXIS 109461, at *14 (quoting *Hauck Mfg. Co. v. Astec. Indus., Inc.*, 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004)).

A claim for tortious interference with business relationships includes five elements under Tennessee law:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means . . . ; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc., v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (citations and emphasis omitted). In *Productive MD*, this District applied the "same proof" standard, and refused to dismiss the plaintiff's intentional interference with business relations claim on preemption grounds. 2011 U.S. Dist. LEXIS 109461, at *24-25. The court there noted that it did not view the plaintiff's allegations "as necessarily being grounded on the use of trade secrets" and found that a reference to the plaintiff's client relationships was "nothing more than the recitation of an essential element of an intentional interference claim." *Id.* at *25.

Here, TCB argues that Plaintiff's "claim is based on TCB's alleged use of trade secrets" and thus it is merely "styled as an interference of a business relationship claim." (Doc. No. 17 at 18.) In making this argument, TCB cites to a particular paragraph in Plaintiff's Amended Complaint that reads as follows:

13

> 66. Shortly thereafter, [Plaintiff] received information that TCB was marketing and attempting to sell the Wilder Policy, and on information and belief, was using [Plaintiff's] Proprietary Information to do so and/or had disclosed [Plaintiff's] Proprietary Information to Landmark and James West, and other brokers and/or buyers, including Ashar Group, LLC. Additionally, TCB, Landmark and/or James West have used and continue to use [Plaintiff's] Proprietary Information, without [Plaintiff's] consent or authorization, in their efforts to market and sell the Wilder Policy.

(Doc. No. 10 ¶ 66.) Plaintiff, by contrast, views the claim as "based on TCB's bad faith breach of the Wilder Agreement." (Doc. No. 21 at 19.)

Plaintiff has alleged sufficient facts to make out a prima facie case of tortious interference with business relations. Plaintiff alleges that it procured a buyer for the Wilder Policy, thus satisfying the first element of the tort, that there was an existing business relationship. (Doc. No. 10 ¶ 64.) Plaintiff has also alleged that TCB knew of this relationship. (*Id.*) Plaintiff has further alleged that TCB entered into an agreement with Plaintiff only to obtain Plaintiff's proprietary information and to use this information to market the Wilder Policy on its own, and that TCB was aware that doing so would likely cause the buyer to withdraw the bid and end its relationship with Plaintiff. (*Id.* ¶ 67-68.) The third and fourth elements of the tort are, therefore, pleaded in the Amended Complaint. Lastly, Plaintiff has pleaded sufficient facts regarding the fifth element of the claim, in that it has alleged that it suffered damages including "lost business opportunity and actual damages in an amount no less than" $250,000. (*Id.* ¶ 70.)

At the same time, the Court recognizes that there are aspects of the allegations that overlap with Plaintiff's TUTSA allegations. For example, some of the allegations for the tortious interference claim (*id.* ¶ 66) appear similar to the allegations regarding the element of misappropriation in Plaintiff's TUTSA claim (*id.* ¶¶ 59-60). Additionally, Plaintiff's allegations regarding damages are largely similar for both claims. (*Id.* ¶¶ 61, 70.) However, none of the

allegations under Plaintiff's tortious interference claim can be construed as allegations that Plaintiff's proprietary information constituted a trade secret (*see id.* ¶¶ 62-70), in contrast with Plaintiff's TUTSA claim (*id.* ¶¶ 56-57).  Taken as a whole, therefore, Plaintiff's allegations constituting its tortious interference claim cannot "simultaneously establish a claim for misappropriation of trade secrets.'"  *ProductiveMD*, 2011 U.S. Dist. LEXIS 109461, at *14 (quoting *Hauck Mfg. Co.*, 375 F. Supp. 2d at 658).

In sum, Plaintiff has sufficiently pleaded a claim for tortious interference of business relations that does not simultaneously establish a TUTSA claim, meaning that it is not preempted by TUTSA.  TCB's Motion is therefore **DENIED** with respect to Plaintiff's tortious interference with business relations claim.

### E.  Unfair Competition Claim

Next, TCB argues that Plaintiff's unfair competition claim should also be dismissed on the grounds that it is preempted by TUTSA.  (Doc. No. 17 at 18-19.)  Plaintiff responds that this claim is not preempted.  (Doc. No. 21 at 21.)  Plaintiff does concede, however, that should the Court determine that the "same proof" test, used to determine what state claims are preempted by TUTSA, applies to its unfair competition claim, then that claim may be preempted by the statute. (*Id.* at 22.)  Plaintiff does not otherwise provide any analysis to rebut TCB's argument that this claim is preempted.

"Unfair competition is a 'broad term encompassing several related torts involving improper interference with business prospects.'"  *J.T. Shannon Lumber Co. v. Barrett*, No. 2:08-cv-2847-JPM-cgc, 2010 U.S. Dist. LEXIS 79099, at *43 (W.D. Tenn. Aug. 4, 2010) (quoting *PartyLite Gifts*, 2006 U.S. Dist. LEXIS 57616, at *23).  A plaintiff bringing an unfair competition claim "must show that (1) the defendant engaged in conduct that amounts to a

recognized tort and (2) that tort deprives the plaintiff of customers or other prospects." *Id.*

(citing *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W. 3d 189, 216 (Tenn. Ct. App. 2004)).

Courts applying Tennessee law have found such unfair competition claims to be preempted

under TUTSA when the claim is based on the defendant's misappropriation of trade secrets. *See*

*ProductiveMD*, 2011 U.S. Dist. LEXIS 109461, at *23 ("[T]he Court will dismiss

ProductiveMD's unfair competition claim to the extent that it is based upon the alleged theft and

use of trade secrets because of the preemption provision of the TUTSA."); *J.T. Shannon Lumber*

*Co.*, 2010 U.S. Dist. LEXIS 79099, at *44 ("Plaintiff's unfair competition [claim] is preempted,

however, to the extent that Plaintiff alleges that it lost customers or business prospects because of

Defendant's alleged misappropriation of proprietary or confidential information.").

Plaintiff's allegations related to this claim appear to largely rest on TCB's alleged

misappropriation of Plaintiff's trade secrets.  (Doc. No. 10 ¶¶ 71-75.)  Thus, under the "same

proof" test, it appears that Plaintiff's claim would fail.  Moreover, Plaintiff has essentially

conceded that this claim should be dismissed, providing no substantive argument as to why the

claim is not preempted by TUTSA.  For these reasons, the Court **GRANTS** TCB's Motion

insofar as it seeks dismissal of Plaintiff's unfair competition claim.  Accordingly, this claim is

**DISMISSED**.

> ### F.  Breach of Duty of Good Faith and Fair Dealing Claim

TCB then argues that Plaintiff's breach of duty of good faith and fair dealing claim

should be dismissed because "it is not a [standalone] cause of action."  (Doc. No. 17 at 19.)

Plaintiff responds that its breach of the duty of good faith and fair dealing claim should remain in

place, as it represents "an additional and different type of breach" of the parties' alleged

agreement about the Wilder Policy.  (Doc. No. 21 at 12.)  Thus, although this count arises out of

the contract the parties allegedly had, Plaintiff asserts that TCB erroneously characterizes such a legal claim as not being an independent basis for relief. (*Id.*)

"Parties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." *Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006) (citing *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996)). The purposes of the implied-in-law covenant are (1) to honor the parties' reasonable expectations, and (2) to protect their right to receive the benefits of the agreement into which they entered. *Id.* at 642-43 (citations omitted). The covenant "does not, however, create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Id.* at 643. Further, it is not a standalone claim, but rather part of an overall breach of contract claim. *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009) (citing *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000)).

In this case, Plaintiff has pleaded a breach of contract claim, which the Court refused to dismiss, *see supra* Section III.B. Plaintiff's claim is not, therefore, a "standalone cause of action," as TCB asserts, but is instead tied to Plaintiff's breach of contract claim. Moreover, Plaintiff specifically refers to the parties' alleged agreement in this claim. (Doc. No. 10 ¶ 77.) As a result, TCB's arguments on this claim are misplaced, and TCB's Motion is **DENIED** as to Plaintiff's breach of duty of good faith and fair dealing claim.

### G. Unjust Enrichment Claim

Next, TCB argues that Plaintiff's unjust enrichment claim should be dismissed on the grounds that it is preempted by TUTSA. (Doc. No. 17 at 19-20.) Plaintiff responds, however,

that its unjust enrichment claim is not preempted and is sufficiently pleaded in its Amended Complaint.  (Doc. No. 21 at 22-23.)

An unjust enrichment claim under Tennessee law is composed of three elements: "1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'"  *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)).

Plaintiff alleges that, as a result of TCB's alleged breach of the parties' agreement and its use of Plaintiff's proprietary information, TCB has "benefitted and continue[s] to benefit from the use of [Plaintiff's] Proprietary Information as it relates to [its] ability to assess the value of and sell the Wilder Policy in that [TCB] will now be able to sell the policy using [Plaintiff's] proprietary information without compensating [Plaintiff] for the same."  (Doc. No. 10 ¶ 82.) Plaintiff further alleges that TCB "could not have accurately assessed the value of, nor could [it] have effectively marketed the Wilder Policy without using [Plaintiff's] Proprietary Information." (*Id.* ¶ 83.)  Lastly, Plaintiff alleges that TCB "will be unjustly enriched in the amount of $250,000, since TCB "will receive some or all of the commission that was earned by and owed to [Plaintiff] relative to the marketing and sale of the Wilder Policy."  (*Id.* ¶ 84.)  The Court finds that these allegations are sufficient to establish a prima facie case of unjust enrichment.

By contrast, in the section of its Amended Complaint related to this claim, Plaintiff does not allege that its proprietary information constitutes a trade secret, nor that TCB misappropriated any trade secrets, unlike with Plaintiff's TUTSA claim (*see id.* ¶¶ 56-57 & 59-60).  TCB's argument that Plaintiff's unjust enrichment claim is preempted must, therefore, fail.

Accordingly, TCB's Motion is **DENIED** insofar as it seeks dismissal of Plaintiff's unjust enrichment claim.

   *H.   Ripeness of Plaintiff's Claims*

   TCB makes a final general argument: that Plaintiff's claims are not ripe because TCB had yet to sell the Wilder Policy or portfolio of policies at the time the complaint and its Motion were filed and because Plaintiff "seeks damages that are yet to be determined."  (Doc. No. 17 at 20-21.)  Thus, TCB argues that the entire Amended Complaint is not ripe and should be dismissed pursuant to Rule 12(b)(1).  (*Id.* at 21.)

   In its Response, Plaintiff disputes TCB's contention that the claims in this case are not ripe for adjudication.  Plaintiff argues that it has clearly pleaded that it was deprived of a commission, and that TCB has failed to cite authority supporting its position that Plaintiff must await the sale of the Wilder Policy before bringing claims related to the Policy.  (Doc. No. 21 at 23-24.)  Moreover, Plaintiff asserts that its Amended Complaint contains sufficient factual allegations to support its argument that the claims contained therein are ripe for review.  (*Id.* at 24.)

   The Sixth Circuit employs a three-factor test to address whether a dispute is ripe for adjudication: "(1) the likelihood that the harm alleged by the party will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003) (citing *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998)). Moreover, "[t]he ripeness doctrine generally applies in cases . . . in which a party seeks a declaratory judgment based on preenforcement review of a statute or regulation, or . . . of

contract provisions." *Kardules v. City of Columbus*, 95 F.3d 1355, 1343 (6th Cir. 1996).

TCB provides scant analysis of why this case is not ripe for adjudication, asserting simply that because "Plaintiff seeks damages resulting from the sale [of the Wilder Policy] or alternatively for TCB to be disgorge [*sic*] of all profits," the case "is not ripe" as "no sale has occurred." (Doc. No. 17 at 20.) TCB's assertion is both factually and legally incorrect. Plaintiff has not sought damages on a lost-profits basis, nor does Plaintiff exclusively "seek[] damages resulting from the sale" of the Wilder Policy. Rather, TCB's damages are tied almost exclusively to the $250,000 commission it is alleged to have lost as a result of TCB's alleged refusal to sell the Wilder Policy to the buyer Plaintiff found.

Furthermore, having considered the three-factor test employed by the Sixth Circuit for issues of ripeness, the Court finds that this case is ripe for review. Plaintiff alleges that it has already suffered harm by way of a lost commission, not that it will suffer some speculative future harm. Moreover, although this case is in its initial stages, the Court has no reason to doubt that the factual record will be sufficiently developed to allow for a fair adjudication of Plaintiff's claims. Lastly, Plaintiff would suffer hardship if this case were to be dismissed at this stage.

In addition, while the ripeness issue is not exclusively reserved for declaratory judgment actions, the Court finds the Sixth Circuit's characterization of the relevancy of the ripeness doctrine in *Kardules* to be instructive. Put plainly, this case is not a declaratory judgment action. Rather, Plaintiff brings various state law claims against TCB and other Defendants for their alleged actions relating to an alleged agreement between Plaintiff and TCB and TCB's alleged refusal to comply with the terms of that agreement. The Court sees no basis for dismissing this entire case on the grounds that it is not ripe for review. TCB's Motion is, therefore, **DENIED** insofar as TCB seeks dismissal of the entire matter under Rule 12(b)(1) for lack of ripeness.

# IV.    CONCLUSION

For the reasons given above, TCB's Motion is **GRANTED in part** and **DENIED in part**.  Accordingly, Plaintiff's claim for unfair competition is **DISMISSED**.

It is so ORDERED.

Entered this the ____29th_____ day of December, 2011.


_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT