UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MELVILLE CAPITAL, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:11-cv-00888 |
| | ) | |
| v. | ) | Judge Nixon |
| | ) | Magistrate Judge Griffin |
| **TENNESSEE COMMERCE BANK,** | ) | |
| **LANDMARK CONSULTING, LLC, and** | ) | |
| **JAMES D. WEST, individually,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is Defendant Tennessee Commerce Bank's ("TCB") Motion to Disqualify and Stay Proceedings, with Incorporated Memorandum of Law ("Motion"). (Doc No. 18.) Plaintiff Melville Capital, LLC has filed a Response in Opposition to Defendant's Motion (Doc. No. 22), to which TCB has filed a Reply (Doc. No. 31). The Court previously denied TCB's request for a stay (Doc. No. 27), but held a hearing on the disqualification issue on December 12, 2011. For the reasons given below, TCB's Motion is **DENIED**.

### I. BACKGROUND

#### A. *Factual Background*[1]

This case arises out of an alleged agreement between Plaintiff and TCB regarding the marketing and sale of a life insurance policy in which TCB allegedly had a property interest. Plaintiff alleges that TCB breached the parties' agreement and now brings various claims against TCB and other named Defendants.

---

[1] The facts in this section are taken from Plaintiff's Amended Complaint (Doc. No. 10), unless otherwise noted.

1

TCB seeks dismissal of Plaintiff's counsel, Adams and Reese, LLP ("Adams and Reese" or "the firm"), because the firm is counsel of record for TCB in *In Re Gourdon*, a bankruptcy matter in the Western District of Louisiana. (Doc. No. 18 at 1-2.) As the parties dispute many details and the way that the fact should be interpreted, the Court will refer to such alleged facts when explaining the parties' arguments below.

*B. Procedural Background*

Plaintiff initiated this lawsuit against Defendants TCB, Landmark Consulting, LLC, and James D. West on September 19, 2011. (Doc. No. 1.) Plaintiff filed an Amended Complaint on October 25, 2011. (Doc. No. 10.) Plaintiff brings the following claims: breach of contract against TCB; violation of the Uniform Trade Secrets Act against all three Defendants; tortious interference with business relations against TCB; unfair competition against all three Defendants; breach of duty of good faith and fair dealing against TCB; and unjust enrichment against all three Defendants. (*Id.*)

On November 8, 2011, TCB filed its Motion (Doc. No. 18), to which Plaintiff filed a Response in Opposition on November 28, 2011 (Doc. No. 22). TCB filed a Reply on December 2, 2011. (Doc. No. 31.) The Court held a hearing on Plaintiff's Motion on December 12, 2011.

**II.    LEGAL STANDARD**

When a court is confronted with a motion to disqualify counsel, it "must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988). Because these motions "can be misused as techniques of harassment," *Hamrick v. Union Twp.*, 81 F. Supp. 2d 876, 878 (S.D. Ohio 2000) (citations omitted), "courts

must be vigilant in reviewing disqualification motions," *MJK Family LLC v. Corporate Eagle Mgmt. Servs.*, 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009) (citing *Manning*, 849 F.2d at 224). The moving party "has the burden of proving that opposing counsel should be disqualified." *Bartech Indus. v. Int'l Baking Co.*, 910 F. Supp. 388, 392 (E.D. Tenn. 1996).

Pursuant to Local Rule 83.01(e)(4), attorneys appearing before courts in this District are held to the standards set forth in the Tennessee Code of Professional Responsibility ("Rules"). Rule 1.7 governs conflicts of interest with current clients. The Rule prohibits a lawyer from representing a client if there would be "a concurrent conflict of interest," which exists where "the representation of one client will be directly adverse to another client," or where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." Tenn. Sup. Ct. R. 8, Rule 1.7(a). Even if there is a concurrent conflict of interest, a lawyer may nevertheless represent a client if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client," the representation is lawful and "does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal," and each client "gives informed consent, confirmed in writing." *Id.* 1.7(b).

Conflicts of interest with former clients may also merit disqualification. "[M]otions to disqualify counsel for conflicts of interest with former clients are governed by two intertwined sources of authority – the state rules of professional responsibility and federal common law under the test elucidated by the Sixth Circuit in *Dana Corp.*" *Jordan v. Kohl's Dep't Stores, Inc.*, No. 3:10-cv-0051, 2010 U.S. Dist. LEXIS 134060, at *10 (M.D. Tenn. Dec. 17, 2010) (citations omitted). In *Dana Corp.*, the Sixth Circuit articulated a three-part test to determine if

3

an attorney should be disqualified from a particular matter: "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990). Moreover, Rule 1.9(a), which details duties owed to former clients, states as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

A "substantially related matter" is defined as one that:

> involve[s] the same transaction or legal dispute or other work the lawyer performed for the former client if there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter, unless that information has become generally known.

Tenn. Sup. Ct. R. 8, Rule 1.9 cmt. 3.

The Rules also provide for imputation of conflicts of interest in certain circumstances. Rule 1.10 states: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by" Rules 1.7 or 1.9. Nonetheless, if a firm employs a lawyer who would be personally disqualified from representing "a person with interests adverse to a client of" the firm, one or more of the firm's other lawyers may represent the person if both the disqualified lawyer and the other lawyer(s) "identify that the personally disqualified lawyer is prohibited from participating in the representation of the current client"; they determine that the other lawyer(s) have not "acquired any information from the personally disqualified lawyer that is material to the current matter and

4

is protected by RPC 1.9(c)[2]"; they "promptly implement screening procedures"; and they "advise the former client in writing of the circumstances that warranted the implementation of screening procedures . . . and of the actions that have been taken to comply" with the Rules. *Id.* 1.10(c).

### III.  ANALYSIS

TCB argues that disqualification is warranted in this case because Adams and Reese is counsel of record for, and thus currently represents, TCB as a creditor in a bankruptcy suit in Louisiana, *In Re Gourdon*. Although there has been no activity in the case since November of 2010, when the bankruptcy court most recently modified the bankruptcy plan, TCB argues that it is a current client of Adams and Reese because of the necessary "continual monitoring of the docket to confirm that the debtors honor their obligations under their bankruptcy plan." (Doc. No. 18 at 4.) TCB states that Adams and Reese would be obligated to continually monitor the docket and notify TCB of any activity, including the conclusion of the matter, should the debtors fail to honor the terms of the bankruptcy plan. (*Id.* at 5.) In the event that the debtors fail to comply, TCB argues that Adams and Reese would need to file an affidavit in support of TCB's claim of non-compliance. (*Id.* at 6.) TCB also argues that any conflict imputed to some lawyers at Adams and Reese would be imputed to other members of the firm, and that under the "hot potato" rule, Adams and Reese cannot cure the conflict by ceasing to represent TCB in *In Re Gourdon*. (*Id.* at 3.) At the hearing, counsel for TCB conceded that the bankruptcy litigation

---

[2] Rule 1.9(c) reads:
>A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter reveal information relating to the representation or use such information to the disadvantage of the former client unless (1) the former client gives informed consent, confirmed in writing, or (2) these Rules would permit or require the lawyer to do so with respect to a client, or (3) the information has become generally known.

5

and the current case are not substantially related and acknowledged that TCB did not share any confidential information with Adams and Reese in the course of that representation.

In its Response, Plaintiff portrays TCB as a former client of Adams and Reese on the grounds that Adams and Reese's representation in *In re Gourdon* concluded in November of 2010. (Doc. No. 22 at 2.) Plaintiff contends that, in keeping with the terms of the Engagement Letter TCB signed, Adams and Reese only served as local counsel for TCB in the bankruptcy case, and that the firm's only responsibilities were to help with the filings of pleadings, which it did not draft. (*Id.* at 3, 5.) Furthermore, contrary to TCB's assertions, counsel for Plaintiff asserted at the hearing that Adams and Reese was never engaged to continually "monitor" the docket in *In re Gourdon*, and it never did so during the time it served as counsel for TCB. Plaintiff states that Adams and Reese did not have any direct communications with TCB, and only communicated with Burr Forman, TCB's lead counsel, which did not share any confidential information about TCB with Adams and Reese. (*Id.* at 5.) Plaintiff states that the last work Adams and Reese has done for TCB was to send Burr Forman a copy of the November 1, 2010 order that approved a modification of the bankruptcy plan. (*Id.* at 4.) Plaintiff also states that attorneys in Adams and Reese's Baton Rouge office represented TCB in *In Re Gourdon*, while attorneys in its Memphis and Nashville offices, none of whom did any work on the bankruptcy case, currently represent Plaintiff. (*Id.* at 6.)

Plaintiff also disputes TCB's portrayal of the future work Adams and Reese may be required to do for TCB. Plaintiff notes that the debtors in *In Re Gourdon* are four years into a five-year payment plan. (*Id.* at 10.) Moreover, Plaintiff argues that, in the event the debtors in the bankruptcy matter fail to make the remaining payments, there can be no further action in that case under the terms of the payment plan. (*Id.* at 10-11.) As such, any subsequent action would

6

have to be brought as a new civil case, distinct from Adams and Reese's representation of TCB, rendering TCB's argument that Adams and Reese may have to take future action on TCB's behalf simply wrong. (*Id.* at 11.) In addition, Plaintiff notes that any theoretical affidavit that would have to be filed in the bankruptcy proceeding would have to come from the Chapter 13 Trustee, per the terms of the bankruptcy plan, and not from Adams and Reese. (*Id.* at 11-12.)

Plaintiff further argues that, even if TCB is viewed as a current client, Adams and Reese should not be disqualified from representing Plaintiff in this case. Plaintiff asserts that TCB's Engagement Letter stated that TCB agreed not to object to the firm taking other clients in future matters that were not substantially related to the firm's work for TCB in the bankruptcy case. (*Id.* at 14.) Plaintiff notes that prospective waivers can be valid if the client is an experienced user of legal services, is reasonably informed about the risk of a future conflict, is independently represented by outside counsel, and the consent is limited to future conflicts unrelated to the subject of the representation—all of which apply here and render TCB's prospective waiver valid, according to Plaintiff. (*Id.* at 14-15.)

Lastly, Plaintiff argues that, should the Court deem TCB's waiver invalid, Adams and Reese can still represent Plaintiff because the firm can represent both clients "with equal vigor, without conflict of loyalties, and without using confidential information to the detriment of either client." (*Id.* at 17-18.) At the hearing, counsel for Plaintiff urged the Court, should it find that there has been a technical violation of the rules, to fashion an appropriate equitable remedy that would allow Adams and Reese to remain as counsel of record for Plaintiff.

In its Reply, TCB first asserts that Adams and Reese's representation of TCB has not ended, since the firm has not provided written notice of termination or sent a final statement for services rendered, either of which must occur for the representation to conclude under the terms

7

of the Engagement Letter. (Doc. No. 31 at 2.) Second, TCB argues that the current year of inactivity in *In re Gourdon* does not support Plaintiff's contention that the case is closed, as there has previously been such a lull in the proceedings that was followed by a period during which Adams and Reese provided services for and billed TCB. (*Id.* at 2-3.) Furthermore, TCB argues that Adams and Reese failed to obtain TCB's written consent before taking any legal action against it, which was required by the Engagement Letter. (*Id.* at 3.) Lastly, TCB argues that the cases Plaintiff has cited in support of Adams and Reese's ability to concurrently represent both TCB and Plaintiff do not support Plaintiff's position, as each client in such a situation must give informed, written consent to the concurrent representation. (*Id.* at 3-4.)

At the hearing, counsel for Plaintiff took the position that the November 5, 2010 billing statement Adams and Reese sent to TCB (Doc. No. 26-8) qualifies as a final statement of services rendered, thus concluding the representation, as it was the last bill it sent to TCB related to the firm's work on the bankruptcy matter. Counsel for Plaintiff further argued that TCB mischaracterizes the waiver provision in the Engagement Letter, since the requirement to obtain written consent prior to proceeding with any legal action against TCB is clearly limited to TCB's Agency and Trust Division, whereas a broader waiver applies to TCB as a whole. (*See* Doc. No. 22-1 at 2.)

Because TCB has conceded that it shared no confidential information with Adams and Reese during the bankruptcy representation, and that such a representation is not substantially related to the current case, the only way that TCB may show that Adams and Reese should be disqualified is under the test for conflicts with current clients. Having considered the parties' filings and their arguments at the hearing, however, the Court determines that TCB has not met

8

its burden to show that Adams and Reese must be disqualified.  TCB's Motion, therefore, is **DENIED**.

There are several factors that, when considered together, indicate that Adams and Reese need not be disqualified from representing Plaintiff.  First, it is not immediately clear that TCB qualifies as a current client of Adams and Reese.  While Adams and Reese served as counsel of record for TCB in the bankruptcy matter (*see* Doc. No. 18-2 at 1), that fact alone does not fully explain the nature of the firm's representation of TCB.  Patricia B. McMurray, a partner at Adams and Reese's Baton Rouge office who represented TCB in *In Re Gourdon*, has testified that "the scope of Adams and Reese's representation of TCB was limited to providing local counsel assistance in connection with the filing of pleadings" in that case.  (Doc. No. 23 ¶ 5.)  Ms. McMurray also testified that Burr Forman, not Adams and Reese, prepared the "substantive pleadings and motions" for TCB in *In Re Gourdon*.  (*Id.* ¶ 13.)  Moreover, an agreed order dated September 10, 2010 that reinstated the bankruptcy case specified that, should the debtors fall over thirty days behind in their payments to the Chapter 13 Trustee, the Trustee may move to dismiss the case *ex parte*, and such a dismissal will bar the debtor from reinstating the case again.  (Doc. No. 22-2.)  Because of these limitations, the Court agrees with Plaintiff that TCB's discussion of future work that Adams and Reese may do in *In Re Gourdon* is more speculative and hypothetical than certain or even likely.

Second, the fact that TCB signed a waiver allowing Adams and Reese to represent clients adverse to TCB in certain circumstances suggests that the firm need not be disqualified here.  As an initial matter, the Court finds it noteworthy that this Engagement Letter was addressed to Bryan T. Glover, an attorney with Burr Forman, rather than an individual at TCB (*see* Doc. No. 22-1 at 1), which further supports Plaintiff's argument that Adams and Reese never had any

9

direct contact with TCB. Moreover, as counsel for Plaintiff noted at the hearing, the letter's sentence regarding conflicts—to which TCB cites in its filings (*see* Doc. No. 31 at 3; Doc. No. 31-5 ¶ 7)—applies to the Agency and Trust Division of TCB (Doc. No. 22-1 at 2). TCB has failed to explain why such a clause is applicable here, and neither does the record provide such an answer—the Agency and Trust Division is not specifically named as a party to this action (*see* Doc. No. 10), and Thomas W. Crocker, who serves as Senior Vice President, Risk Management, for TCB and who submitted a Declaration in support of TCB's Motion, does not specify that he works in that particular Division (*see* Doc. No. 31-5).

Rather, the more general conflicts provision appears to be applicable to the present situation. This provision states that TCB does "not object to [Adams and Reese's] undertaking to represent clients in other matters that are not substantially related to our work for Tennessee Commerce Bank, even if the interests of such clients in those other matters are adverse to Tennessee Commerce Bank." (Doc. No. 22-1 at 2.) The record shows that Mr. Crocker signed the Engagement Letter on March 13, 2008 (*id.* at 3), thus indicating TCB's assent to the waiver provision. As a sophisticated commercial entity that had the benefit of representation by outside counsel (Burr Forman), TCB should, therefore, be deemed to have consented to Adams and Reese's representation of Plaintiff in this instance. *See* Tenn. Sup. Ct. R. 8, Rule 1.7(b) & cmt. 22.

Lastly, the Court finds it relevant and significant that counsel for TCB has conceded that there is no risk of confidential information being shared and that the bankruptcy matter and the current case are not substantially related. Plaintiff has made clear that attorneys from different Adams and Reese branches are involved in this dispute: Plaintiff is currently represented by attorneys in the Memphis and Nashville offices of the firm, whereas local counsel for TCB in *In*

10

*Re Gourdon* worked in the firm's Baton Rouge office. In addition, as the Court has previously stated, both sides agree that the two matters are unrelated and there is no risk of confidential information about TCB being used to Plaintiff's advantage in this case, as Adams and Reese learned no such information during its work for TCB. The requirements of Rule 1.10(c), therefore, appear to be satisfied. So long as Adams and Reese maintains the screening mechanisms that appear to have already naturally fallen into place, the Court sees no problem with attorneys at two Adams and Reese locations representing Plaintiff against TCB in a case wholly unrelated to a matter on which attorneys at a different Adams and Reese location did minimal work for TCB in the past.

**IV.　CONCLUSION**

For the reasons given above, TCB's Motion is **DENIED**.

It is so ORDERED.

Entered this the ____29th_____ day of December, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT